DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| **Plaintiff,** | ) |
| v. | ) Case No. 3:21-cr-0001 |
| **RANDAR VASQUEZ MUNOZ,** | ) |
| **Defendant.** | ) |

**ATTORNEYS:**

**DELIA L. SMITH, UNITED STATES ATTORNEY**
**ADAM F. SLEEPER, ASSISTANT UNITED STATES ATTORNEY**
UNITED STATES ATTORNEY'S OFFICE
ST. THOMAS, U.S. VIRGIN ISLANDS
    *FOR THE UNITED STATES OF AMERICA*

**JOSEPH A. DIRUZZO, III, ESQ.,**
DIRUZZO & COMPANY
FT. LAUDERDALE, FLORIDA
    *FOR DEFENDANT RANDAR VASQUEZ MUNOZ*

## MEMORANDUM OPINION

**MOLLOY, Chief Judge.**

**BEFORE THE COURT** is Defendant Randar Vasquez Munoz's Motion to Dismiss for Improper Venue or in the alternative a Motion to Transfer Venue. (ECF No. 25.) For the reasons stated below, the Court will deny the defendant's motion.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

Because the Court writes exclusively for the parties, this Opinion will only set forth the facts and procedural history relevant to the instant motion.

On November 26, 2020, while on routine patrol, United States Coast Guard Cutter James intercepted a vessel approximately one hundred and fifteen (115) nautical miles off the coast of Isla De Malpelo, Columbia. (ECF No. 1-1.) According to the federal agents on patrol, the vessel in question was traveling in international waters, "transiting in a known drug trafficking vector," and had two outboard engines, numerous fuel barrels as well as

packages visible on deck. (ECF Nos. 1-1 and 72.) The vessel did not display any indicia of nationality.[1] (ECF No. 1-1.) Given the circumstances, the agents concluded the vessel to be subject to the jurisdiction of the United States. *Id.* Once the vessel was deemed without nationality, the Coast Guard agents stopped the vessel and conducted "a full law enforcement boarding." (ECF No. 72.) The boarding resulted in a search of the vessel wherein the agents discovered "multiple fuel canisters and eleven (11) bales containing a total of approximately 383 kilograms of cocaine, as well as a cell phone." *Id.* The three defendants aboard the vessel, including Munoz were subsequently detained. (ECF No. 46.)

The Government then filed a criminal complaint here in the District Court of the Virgin Islands on December 4, 2020. (ECF No. 1.)  Munoz and his codefendants were then transported to Miami where they made their initial appearance in the Southern District of Florida on December 9, 2020. (ECF No. 46.)

Shortly after the defendants made their initial appearance, the Government filed a three-count Information in the District Court of the Virgin Islands. (ECF No. 10.) Count One charged each of the defendants with conspiracy to possess a controlled substance with intent to distribute while on board a vessel, in violation of Title 46, United States Code, Sections 70502(c)(1)(A), 70503(a)(1), 70504(b)(2), and 70506(a) and (b). *See id.* Count Two charged them with possession of a controlled substance with intent to distribute while on board a vessel, in violation of Title 46, United States Code, Sections 70502(c)(1)(A), 70503(a)(1), 70504(b)(2), 70506(a) and Title 18, United States Code, Section 2. *See id.* And Count Three charged failure to heave to, in violation of Title 18, United States Code, Sections 2237(a)(1). *See id.* Then, on April 15, 2021, the Grand Jury returned an Indictment against the defendants charging each defendant with the same charges contained in Count One and Count Two of the Information.[2] *See* ECF No. 31.

Munoz filed the instant motion to dismiss on April 14, 2021. (ECF No. 25.) The Government filed a response on April 28, 2021. (ECF No. 46.)

---

[1] Special Agent Scott stated in his affidavit that the vessel possessed no indicia of nationality as "there was no flag being flown, no registration documents, and no markings on the hull of the vessel." (ECF No. 1-1.)

[2] The Indictment did not charge the Defendants with failure to heave to. *See* ECF No. 31.

## II. LEGAL STANDARD

### a. Improper Venue

Under the Federal Rules of Criminal Procedure, a defense of improper venue "must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(A)(i). When considering a challenge to venue in a criminal case, the district court must keep in mind that proper venue in the criminal context is "more than just a procedural requirement; it is a constitutionally guaranteed safeguard." *United States v. Root*, 585 F.3d 145, 155 (3d Cir. 2009). Therefore, the Government must always "prosecute an offense in a district where the offense was committed," unless a statute says otherwise or the offense was not committed within a state or territory, in which case, "the Trial shall be at such Place or Places as the Congress may by Law have directed." Fed. R. Crim. P. 18; U.S. Const. art. III, § 2, cl. 3.

One such statute that permits the Government to prosecute a case in jurisdictions other than where the alleged offense was committed is 46 U.S.C. § 70504(b). Under this venue provision, "A person violating section 70503 or 70508(1) shall be tried in the district in which such offense was committed; or (2) if the offense was begun or committed upon the high seas, or elsewhere outside the jurisdiction of any particular State or district, may be tried in any district." 46 U.S.C. § 70504(b). Therefore, a district court does not possess the authority to dismiss for improper venue under Section 70504(b)(2) when the alleged offense was committed on the high seas, no matter how attenuated the jurisdiction is from the relevant events in the case.

### b. Transfer of Venue

However, even if outright dismissal of the case may be inappropriate, "[u]pon the defendant's motion, the court must transfer the proceeding against that defendant to another district if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." Fed. R. Crim. P. 21(a). Additionally, "[u]pon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice" Fed.

*United States v. Munoz, et al*
Case No. 3:21-cr-0001
Memorandum Opinion
Page 4 of 8

R. Crim. P. 21(b). While motions made pursuant to Rule 21(b) are "'generally committed to the discretion of the District Courts,'" the Third Circuit has laid out several factors to consider when determining whether transfer of a criminal case is appropriate. *See U.S. v. Menendez*, 109 F. Supp. 3d 720, 725 (D.N.J. 2015) (quoting *In re U.S.,* 273 F.3d 380, 387 (3d Cir. 2001)); *see also United States v. Inigo,* 925 F.2d 641, 655 (3d Cir. 2009) (denial of change of venue is reviewed for abuse of discretion) (citation omitted). The factors include:

> (1) location of [the] . . . defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of [the] place of trial; (9) docket condition of each district . . . involved; and (10) any other special elements which might affect the transfer.

*In re U.S.,* 273 F.3d at 387–88.

### III. DISCUSSION

In the instant motion, Munoz argues that the Government effectively manufactured venue by prosecuting the defendants in St. Thomas as opposed to Miami where the defendants were taken for their initial appearance in hopes of obtaining a longer sentence from this Court. (ECF No. 25 at 3.)[3] Thus, Munoz believes that because the Government manipulated venue to its advantage, venue in this district is improper, and as such, the charges should be dismissed.  *See id.*

Additionally, Munoz argues, in the alternative, that if the case is not dismissed, these proceedings should be transferred to Miami for his convenience and in the interest of justice. *See id* at 4. Munoz argues that a transfer is justified, because he made his initial appearance in Miami, and because he anticipates that the Government will allege "that the cocaine was headed to Florida," thus giving the residents of Florida a vested interest in adjudicating the case. *Id.* Additionally, Munoz contends he will be prejudiced if the case is not transferred "given the distance [of St. Thomas] from the location of the alleged crime" and because a

---

[3] In addition to the manufactured venue argument, Munoz also avers that Count Three is governed by Section 3238, and thus, the case must go forward where he "was first brought, i.e., in Miami, and not in this District." (ECF No. 25 at 4.) However, as will be discussed in footnote 4, the issue is moot as Count Three was not brought in the Indictment. (ECF No. 31.)

Miami jury would potentially be able to better evaluate his credibility by listening to his testimony in his native tongue (Spanish) rather than through an interpreter. *Id.*

### a. Dismissal

Munoz's arguments as to dismissal are without merit. Munoz claims that the pending charges should be dismissed because the Government manufactured venue by bringing the defendants to Miami first, and then prosecuting the case in St. Thomas. Federal courts have rejected such arguments and have concluded that manufactured venue is almost never a viable theory for relief. *See e.g., United States v. Sitzmann*, 893 F.3d 811, 823 (D.C. Cir. 2018) ("We remain unconvinced that 'manufactured venue' or 'venue entrapment' are viable theories."); *United States v. Valenzuela*, 849 F.3d 477, 488 (1st Cir. 2017) ("[T]he First Circuit has never accepted the existence of a 'manufactured venue' doctrine, and most circuits have rejected the concept of manufactured venue or 'venue entrapment.'"); *United States v. Rodriguez-Rodriguez*, 453 F.3d 458, 462 (7th Cir. 2006) ("[T]he entrapment doctrine . . . does not limit venue."); *United States v. Al-Talib*, 55 F.3d 923, 929 (4th Cir. 1995) ("There is no such thing as 'manufactured venue' or 'venue entrapment.'"); *United States v. Moody*, 664 F. App'x 367, 369 (5th Cir. 2016) (noting that the Fifth Circuit has never "recognized the concept of 'manufactured venue.'") (citation omitted); *United States v. Chi Tong Kuok*, 671 F.3d 931, 938 (9th Cir. 2012) (stating manufactured venue may only be a viable theory in "cases involving 'extreme' law enforcement tactics.").

Moreover, as the Government correctly notes, even if manufactured venue was a valid theory to proceed upon, it would be inapplicable in this context. The defendants were not "lured" out of Florida and into St. Thomas to commit a crime. Nor does the Government rely on some obscure and miniscule fact to establish jurisdiction in St. Thomas while the overwhelming amount of the relevant events took place in Florida. The defendants were detained thousands of miles from the Southern District of Florida and were, purportedly, arrested closer to St. Thomas than they were to Miami. The defendants' only connection to Florida was their initial appearance there. In other words, there was no factual basis to try the case in Florida, and thus, holding a trial outside of Florida cannot constitute manufactured venue.

More importantly, however, it would be impossible for the Government to manufacture venue in the case at bar because pursuant to Section 70504(b), the Government can bring a charge under Section 70503 in any district that it chooses when the offense occurred on the high seas. *See* 46 U.S.C. § 70504(b) (regarding charges brought under 70503, "if the offense was begun or committed upon the high seas, or elsewhere outside the jurisdiction of any particular State or district, [the case] may be tried in any district"). Both counts in the Indictment are brought, in part, pursuant to Section 70503. *See* ECF No. 31. Thus, because Munoz never suggests the alleged offense did not occur on the high seas, the Government has the authority to bring this matter in any jurisdiction it chooses including the U.S. Virgin Islands. As such, there could not be manufactured venue under these circumstances.[4]

### b. Transfer

Munoz's alternative argument, that the case should be transferred to Florida, fails as well. While Munoz does not clarify whether he seeks to transfer the case on the bases of prejudice or convenience, the question is irrelevant as he fails to carry the burden on either front.

Munoz asserts that denial of a transfer would be appropriate because (1) his initial appearance was in Miami; (2) a Miami jury would be better able to evaluate his credibility given that he is a Spanish speaker; (3) St. Thomas is a substantial distance from the alleged crime; and (4) residents of Florida have a greater vested interest in adjudicating the case because he "expects th[e] Government to allege[] that the cocaine was headed to Florida." (ECF No. 25 at 4.) None of these arguments justify transfer of venue.

As to the first argument, Munoz offers none, nor could the Court identify any statutory or precedential authority to support the conclusion that a defendant is prejudiced or inconvenienced by the Government prosecuting the case in a place other than where he made his initial appearance, particularly when the defendant does not reside or have any

---

[4] The Court also finds that Munoz's argument as to Count Three of Information is moot given that the charge was not included in the Indictment and the Government has not sought leave of court or the defendants' consent to proceed to trial by information. *See* ECF No. 31; *United v. Erickson*, Crim. No. 2019-52, 2019 WL 3759438, at *4-5 (D.V.I August 1, 2019). Accordingly, there is no need for the Court to consider whether the Section 3238 venue statute applies to the offense of failure to heave at this juncture.

meaningful connection to the jurisdiction where he seeks to have the case transferred. Thus, Munoz failed to make any showing of prejudice let alone prejudice so great so as to deny him a fair and impartial trial. Accordingly, this argument does not weigh in favor of transfer.

Munoz's second argument fairs no better. While it appears Munoz is attempting to make a prejudice argument, he fails to demonstrate any potential for impartiality on the part of a Virgin Islands jury utilizing an interpreter that would justify transfer, especially given that interpreters are routinely used in cases were the defendant does not speak English or does not speak English as their primary language. *See United States v. Smith*, Crim No. 4:CR-05-0428, 2006 WL 299863, at *1 (M.D. Pa. Feb. 8, 2006) ("It is the moving defendant's burden to demonstrate a reasonable likelihood that a fair and impartial trial is unobtainable in the transferring district."). The Court thus finds there is no prejudice as a jury empaneled in St. Thomas would be more than capable of assessing the credibility regardless of the jury's fluency in Spanish. Moreover, even if the case was transferred to Miami, the proceedings would still carry on in English with the support of an interpreter irrespective of how many jurors understood Spanish. As such, this argument carries no weight in favor of transfer. 28 U.S.C. § 1827(d)(1)

The third argument, the distance of the crime from St. Thomas, is similarly without merit. St. Thomas and Miami are almost the exact same distance from the alleged crime. In fact, St. Thomas is slightly closer. Therefore, there is no additional inconvenience on the defendant in trying the case in St. Thomas as opposed to Miami. Moreover, given the location of the alleged crime, there is no venue in the United States that would be substantially close enough to the alleged offense to justify transfer. Thus, this argument does not favor transfer.

Munoz's last argument in favor of transfer fails as well. Munoz contends that a Florida jury should hear the case because he believes the Government will allege that the cocaine was headed toward Florida. Not only is the interest of the jury not a factor for consideration in transferring a criminal case for the purposes of convenience, it is also not a factor that would unduly prejudice Munoz. *See U.S. v. Negron*, Crim. No. 08–501, 2008 WL 5272056, at *2 (D.N.J. Dec. 16, 2008) (when making an argument for transfer on grounds of convenience, "a defendant must support its motion with some facts that tend to support the Platt factors")

(citing *In re United States of America*, 273, F.3d at 386). Even assuming arguendo that the Government will assert that the cocaine was headed toward Florida, proceeding in St. Thomas certainly does not prejudice Munoz given the reasonable assumption that jurors would likely be more biased if the contraband were headed toward their own jurisdiction as opposed to someone else's.

In light of these considerations, the arguments raised by Munoz do not support transfer of the case under either Rule 21(a) or 21(b).

## IV.    CONCLUSION

After thorough consideration and review, the Court finds that Munoz's motion to dismiss for improper venue is without merit given that the manufactured venue doctrine is not a viable theory for relief, and even if it was, the Government has the authority in this instance to bring the case in any jurisdiction it chooses. The Court also rejects the alternative motion for transfer given that Munoz failed to make a substantial showing of prejudice or inconvenience that would justify transfer.

The premises considered, the Court will deny Munoz's Motion to Dismiss for Improper Venue or in the alternative a Motion to Transfer Venue. An appropriate Order follows.

**Dated:** February 14, 2023                                        */s/ Robert A. Molloy*
                                                                  **ROBERT A. MOLLOY**
                                                                  **Chief Judge**