**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:21-cr-0001 |
| ) | |
| MURILLO GOMEZ ELEUTERIO, RANDAR ) | |
| VASQUEZ MUNOZ, and MAINOR SALAZAR ) | |
| MONTERO, ) | |
| ) | |
| Defendants. ) | |

ATTORNEYS:

**Delia L. Smith, United States Attorney**
**Adam F. Sleeper, Assistant United States Attorney**
United States Attorney's Office
St. Thomas, U.S.V.I.
  *For the United States of America,*

**Joseph A. DiRuzzo, III, Esq.,**
DiRuzzo & Company
Ft. Lauderdale, FL,
  *For Defendant Randar Vasquez Munoz.*

## MEMORANDUM OPINION

**MOLLOY, Chief Judge.**

**BEFORE THE COURT** are two of Defendant Randar Vasquez Munoz's Motions to Suppress. (ECF Nos. 54 and 76.) The first motion the Court will address seeks to suppress evidence based on the Government's alleged violation of the Posse Comitatus Act. (ECF No. 76.) The second motion seeks to suppress the information extracted from a cell phone the Government seized while aboard the defendant's vessel. (ECF No. 54.) For the reasons stated below, the Court will deny the first motion without an evidentiary hearing and find the second motion moot.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On November 26, 2020, while on routine patrol, United States Coast Guard Cutter James intercepted a vessel approximately one hundred and fifteen (115) nautical miles off

*United States v. Eleuterio, et al.*
Case No. 3:21-cr-0001
Memorandum Opinion
Page 2 of 12

the coast of Isla De Malpelo, Columbia. (ECF No. 1-1.) According to the federal agents on patrol, the vessel in question was traveling in international waters, "transiting in a known drug trafficking vector," and had two outboard engines, numerous fuel barrels as well as packages visible on deck. (ECF Nos. 1-1 and 72.) The vessel also did not display any indicia of nationality.[1] (ECF No. 1-1.) Given the circumstances, the agents concluded the vessel to be subject to the jurisdiction of the United States. *Id.* Once the vessel was deemed without nationality, the Coast Guard "attempted to make a stop, by activating lights and hailing the vessel in both English and Spanish." (ECF No. 72 at 1.) Despite the Coast Guard's attempts to stop the vessel, it reportedly continued at a high rate of speed making erratic movements. *Id.* After a short chase, the Coast Guard shot one of the vessel's outboard motors rendering the vessel inoperable. (ECF No. 53.) Because the vessel was treated as one without nationality, the agents subsequently conducted "a full law enforcement boarding." (ECF No. 72.) The boarding resulted in a search of the vessel wherein the agents discovered "multiple fuel canisters and eleven (11) bales containing a total of approximately 383 kilograms of cocaine, as well as a cell phone." *Id.* The Government notes that the agents attempted to perform an extraction on the phone, however, the extraction was unsuccessful because the phone was wet and had a cracked screen. *See id.* The agents proceeded to extract data from the SIM card but were only able to retrieve a "welcome message from the provider." *Id.*

On May 10, 2021, Defendant Munoz filed a motion seeking to suppress the contents of the cell phone. (ECF No. 54.) The Government filed its response on June 1, 2021, wherein it averred that "[t]here is nothing from this extraction that the government intends to use in the prosecution of the defendants."[2] (ECF No. 72.) Munoz then filed another motion on June 4, 2021, seeking to suppress "Defendant's arrest[], identification, statement(s)," and any other evidence collected during the search of the vessel. (ECF No. 76.) The Government responded to that motion on June 21, 2021. (ECF No. 77.) Munoz did not file a reply.

## II.     LEGAL STANDARD

---

[1] Special Agent Scott stated in his affidavit that the vessel possessed no indicia of nationality as "there was no flag being flown, no registration documents, and no markings on the hull of the vessel." (ECF No. 1-1.)

[2] The Court notes "this extraction" refers to the extraction of the cell phone. *See* ECF No. 72.

*United States v. Eleuterio, et al.*
Case No. 3:21-cr-0001
Memorandum Opinion
Page 3 of 12

### A. Evidentiary Hearing Standard

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. Pursuant to Federal Rule of Criminal Procedure 12(b)(3)(C), a defendant may file a motion to suppress evidence wherein he may challenge the constitutionality of a search or seizure. While a party may request an evidentiary hearing on their motion to suppress prior to trial, an evidentiary hearing is not granted as a matter of course. *See* Fed. R. Crim. P. 12(c)(1) ("The court may . . . schedule a motion hearing."); *United States v. Sophie*, 900 F.2d 1064, 1071 (7th Cir. 1990) ("A district court does not have to hold an evidentiary hearing on a motion just because a party asks for one."); *United States v. Blackman*, 407 Fed. App'x 591, 594 (3d Cir. 2011). Although Rule 12 does not expressly lay out when a party is entitled to a pretrial evidentiary hearing, at a minimum, the defendant's motion must be "sufficiently specific, non-conjectural, and detailed to enable the court to conclude that (1) the defendant has presented a colorable constitutional claim, and (2) there are disputed issues of material fact that will affect the outcome of the motion to suppress." *United States v. Hines*, 628 F.3d 101, 105 (3d Cir. 2010) (citing *United States v. Voight*, 89 F.3d 1050, 1067 (3d Cir. 1996)), *overruled on other grounds by Alleyne v. United States*, 570 U.S. 99 (2013). Moreover, a pretrial evidentiary hearing will only be granted if the "party requesting the hearing raises a significant factual issue." *Sophie*, 900 F.2d at 1070-71; *United States v. Jackson*, 363 Fed. App'x 208, 210 n.2 (3d Cir. 2010) (moving party must "raise significant factual disputes in order to receive a pretrial evidentiary hearing"); *United States v. Glass*, 128 F.3d 1398, 1408-09 (10th Cir. 1997). Thus, even if the defendant lays out a colorable constitutional claim, as long as there are no material facts in dispute, the district court may proceed without an evidentiary hearing.

### B. Posse Comitatus Act

The Posse Comitatus Act ("PCA") was enacted in 1878, following Reconstruction, in an effort to stop the use of military personnel in aiding civil law enforcement officials.[3] *See*

---

[3] *See generally* Mark David "Max" Maxwell, *The Enduring Vitality of the Posse Comitatus Act of 1878*, 37 Prosecutor 34, 34 (2003) (discussing the historical origins of the PCA); Clarence I. Meeks, III, *Illegal Law*

*United States v. Eleuterio, et al.*
Case No. 3:21-cr-0001
Memorandum Opinion
Page 4 of 12

*United States v. Wooten*, 377 F.3d 1134, 1139 (10th Cir. 2004); *United States v. Allred*, 867 F.2d 856, 870 (5th Cir. 1989); *Gillars v. United States*, 182 F.2d 962, 972 (D.C. Cir. 1950) ("By using the words 'posse comitatus' the Congress intended to preclude the Army from assisting local law enforcement officers in carrying out their duties."). Although relying on the military to quell riots and rebellion had become common practice in the United States, Congress grew concerned that military personnel trained to fight wars would not be especially concerned with upholding and enforcing the constitutional rights of civilians.[4] *See United States v. McArthur*, 419 F. Supp. 186, 193-94 (D.N.D. 1975); *see also* 141 A.L.R. Fed. 271. Consequently, Congress set out in the PCA to create a bright line separation between military duties and the duties of civilian law enforcement personnel. While the Act was originally constrained to the Army alone, the PCA has since been amended on several occasions.[5] The most recent version of the statute reads as follows:

> Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army, the Navy, the Marine Corp, the Air Force, or the Space Force as a posse comitatus or otherwise to execute the laws shall be fined under this title or imprisoned not more than two years, or both.

18 U.SC. § 1385.

Courts have generally construed Section 1385 to apply only to the military branches expressly enumerated by the statute or a regulatory directive. *See United States v. Khan*, 35 F.3d 426, 431 (9th Cir. 1994) (citing *United States v. Yunis*, 924 F.2d 1086, 1094 (D.C. Cir. 1991). To determine if military conduct violates the PCA, district courts will apply one of three tests, any of which are sufficient to establish a violation. *See United States v. Yunis*, 681 F. Supp. 891, 892 (D.D.C. 1988). The first test is the *McArthur* test which asks whether the

---

*Enforcement: Aiding Civil Authorities in Violation of the Posse Comitatus Act*, 70 Mil. L. Rev. 83 (1975) [hereinafter *Illegal Law Enforcement*].

[4] *See also* Meeks, *Illegal Law Enforcement*, *supra* note 3, at 89-90 (explaining that federal troops were frequently used from 1866-1877 to quell domestic disturbances, quash labor unrest, and suppress rebellions).

[5] The Posse Comitatus Act was first amended in 1956 to add the Air Force to reflect the fact that it was now a separate branch from the Army. *See United States v. Walden*, 490 F.2d 372, 375 n.5 (4th Cir. 1974); Meeks, *Illegal Law Enforcement*, *supra* note 3, at 100. Then, in the most recent amendment, Congress added, the Navy, the Marine Corps, and the Space Force. *See* Pub. L. No. 117-81, Div. A, Title X, § 1045(a), Dec. 27, 2021, 135 Stat. (1904).

use of the military was regulatory, proscriptive, or compulsory. *See McArthur*, 419 F. Supp. at 194; *United States v. Stouder*, 724 F. Supp. 951, 953-54 (M.D. Ga. 1989); *United States v. Gerena*, 649 F. Supp. 1179, 1181-83 (D. Conn. 1986). If the court finds that the conduct fell into one of these categories, then the Government has violated the PCA. *See Stouder*, 724 F. Supp. at 953-54. The second test (the *Jaramillo* Test) looks to see if the military involvement in question "pervaded" the civilian law enforcement activities. *United States v. Jaramillo*, 380 F. Supp. 1375, 1379 (D. Neb. 1974); *see Hayes v. Hawes*, 921 F.2d 100, 104 (7th Cir. 1990); *United States v. Hartley,* 796 F.2d 112, 114 (5th Cir. 1986); *United States v. Bacon,* 851 F.2d 1312, 1313 (11th Cir. 1988). The final test is the *Red Feather* test. Pursuant to this test, the court will only find a violation of the PCA if the military involvement was "direct" and "active." *United States v. Red Feather*, 392 F. Supp. 916, 922 (D.S.D. 1975); *see United States v. Yunis*, 924 F.2d at 1094.

However, even if one of the foregoing tests is met, the PCA will not be violated if a congressionally authorized exception applies. *See* 18 U.SC. § 1385 (stating that the Act will apply "except in cases and under circumstances expressly authorized by the Constitution or Act of Congress"); *see also Allred*, 867 F.2d at 871*; United States v. Del Prado-Montero*, 740 F.2d 113, 116 (1st Cir. 1984) (finding that "under the Congressionally authorized regulatory system," the Navy may be given permission to assist federal agencies with law enforcement activities, and therefore the naval conduct in question did not violate the PCA).

Moreover, even when courts have found that a military branch has violated the Posse Comitatus Act, those courts have consistently refused to grant remedies for its violation.[6] In

---

[6] *See, e.g.*, *United States v. Cotten*, 471 F.2d 744, 749 (9th Cir. 1973) (rejecting that dismissal of charges or finding of lack of jurisdiction an appropriate remedy for a violation of the PCA); *Yunis*, 924 F.2d at 1093 (noting, in dicta, that even if the PCA was violated, "a remedial problem would remain" because dismissal of all charges might well be inappropriate.); *See Black Lives Matter v. Trump*, 554 F. Supp. 3d 15, 40 (D.D.C. 2021) ("Critically, the PCA does not create a private civil cause for damages."); *Towery*, 782 F. Supp. 2d at 1191, *aff'd*, 501 Fed. App'x 620 (9th Cir. 2012) ("The PCA is a criminal statute. It does not authorize a civil cause of action."); *Warfield v. United States Air Force*, Civ. No. 2:20-cv-00853, 2020 WL 3868465, at *3 (E.D. Cal. July 9, 2020) ("Because there is no civil cause of action available under the PCA, plaintiff's PCA claim cannot move forward."); *Hartley*, 796 F.2d at 114 ("[E]ven where a violation of the Posse Comitatus Act is found or suspected, courts have generally found that creation or application of an exclusionary rule is not warranted"); *see also* C.J. Williams, *An Argument for Putting the Posse Comitatus Act to Rest*, 85 M.S.L.J. 99, 148 (2016) ("Third parties have attempted to claim that violations of the PCA should be remedied in three ways:" (1) suppression of evidence obtained in violation of the PCA; (2) dismissal of the charges; and (3) money damages. "Generally, the courts have rejected each of these remedies.").

particular, federal courts have overwhelmingly refused to impose the extraordinary remedy of the exclusionary rule for a violation of the PCA.[7] *See Hartley*, 796 F.2d at 114 ("even where a violation of the Posse Comitatus Act is found or suspected, courts have generally found that creation or application of an exclusionary rule is not warranted"); *United States v. Dreyer*, 804 F.3d 1266, 1279 (9th Cir. 2015) (en banc) (reversing the 9th circuit panel's decision to apply the exclusionary rule to a PCA violation while noting that no other circuit had applied the rule in such a circumstance). As such, a third-party criminal defendant will almost never succeed on a theory premised on a violation of the Posse Comitatus Act except in particularly extraordinary circumstances.

### III. DISCUSSION

**A. No Evidentiary Hearing is Necessary.**

There is no need to have a pretrial evidentiary hearing on Munoz's motion to suppress for violation of the PCA as no facts are in dispute, let alone material facts. The parties' only dispute in regard to the instant motion is whether the PCA applies to the Coast Guard. The Third Circuit and its sister circuits have determined that an evidentiary hearing is only necessary if there is a significant factual dispute regarding a dispositive issue in the motion. *See Hines*, 628 F.3d at 105 (requiring that there must be "disputed issues of material fact that will affect the outcome of the motion to suppress"); *United States v. Diaz*, 941 F.3d 729, 740 (5th Cir. 2019) (finding that the "district court correctly determined that there was no need for an evidentiary hearing" because the issue presented "legal questions, and [the defendant] had not articulated any factual disputes for the district court to resolve.") (internal quotations and citations omitted); *United States v. Francois*, 715 F.3d 21, 32 (1st Cir.

---

[7] The following are a collection of cases refusing to apply the exclusionary rule based on a violation of the PCA: *United States v. Johnson*, 410 F.3d 137, 149 (4th Cir. 2005); *Hayes,* 921 F.2d at 104 (noting that courts "have steadfastly refused to apply the exclusionary rule to evidence seized in violation of [Section 1385] and its related regulations"); *United States v. Griley*, 814 F.2d 967, 976 (4th Cir. 1987) (reserving the "extraordinary remedy" of the exclusionary rule for instances of "widespread or repeated violations . . . or ineffectiveness of enforcement by the military") (internal quotations omitted); *Bacon*, 851 F.2d at 1313 (concluding exclusionary rule not warranted); *Hartley*, 796 F.2d at 115 ("[E]ven where a violation of the Posse Comitatus Act is found or suspected, courts have generally found that creation or application of an exclusionary rule is not warranted."); *United States v. Walden*, 490 F.2d 372 (4th Cir. 1974), *cert. denied*, 417 U.S. 977 (1974) (finding exclusionary rule not warranted); *United States v. Khatallah*, 160 F. Supp. 3d 144, 150 (D.D.C. 2016); *United States v. Salinas*, 823 Fed. App'x 259, 261 (5th Cir. 2020) (declining to impose the exclusionary rule).

2013) ("A hearing is required only if the movant makes a sufficient threshold showing that material facts are in doubt or dispute, and that such facts cannot reliably be resolved on a paper record.") (quoting *United States v. Staula*, 80 F.3d 596, 603 (1st Cir. 1996)). Since the only questions before the Court regarding this motion are questions of law, the Court will deny Munoz's request for an evidentiary hearing as to the instant motion.[8] As there is no need for an evidentiary hearing, the Court will proceed to the merits of the motion.

### B. The Government Did Not Violate the PCA

Munoz's motion to suppress based on the Government's alleged violation of the PCA is without merit. In his motion, Munoz argues that his arrest, identification, statements, and other evidence collected during the search of his vessel should all be suppressed "as the boarding of the vessel was in violation of the [PCA]." (ECF No. 76.) Munoz contends that the PCA was violated in this instance because the United States Coast Guard relied on the "right of approach" law to board the defendant's vessel. *Id.* Munoz argues that this law only applies to warships, and thus, by relying on the "warship's" right of approach, the Coast Guard was acting "similar to the U.S. Navy for Posse Comitatus Act purposes." *Id.* In other words, because the Coast Guard was supposedly relying on its vessel's warship status to conduct the search and seizure of the defendant's vessel, Munoz concludes that the Coast Guard was acting in a military capacity while enforcing federal civilian law in violation of the PCA.[9]

The courts that have addressed this issue have consistently held that "the Posse Comitatus Act is not applicable to the Coast Guard." *United States v. Chaparro-Almeida*, 679 F.2d 423, 425 (5th Cir. 1982); *see Panagacos v. Towery*, 782 F. Supp. 2d 1183, 1191 (W.D. Wash. 2011), aff'd, 501 Fed. App'x 620 (9th Cir. 2012) ("The Posse Comitatus Act does not apply to the Coast Guard."); *Jackson v. Alaska*, 572 P.2d 87, 93 (Alaska 1977) (declining to find a PCA violation where the Coast Guard investigated the crime in question because Congress did not intend the PCA to apply to the Coast Guard, and because the Coast Guard is

---

[8] As will be discussed in more detail later, the Court finds Munoz's motion to suppress, at ECF No. 54, moot. Accordingly, there is no need for an evidentiary hearing on that motion either.

[9] Since it is unclear from Munoz's motion whether he is asserting that the Coast Guard was acting "as a service to the Navy" or whether the Coast Guard's conduct was sufficient for it to implicitly fall under the purview of the Section 1385 on its own, the Court will address both contentions in this Opinion. 14 U.S.C. § 103(a).

specifically qualified to act in such a capacity); *cf. Khan*, 35 F.3d at 431 (concluding that naval agents did not violate the PCA because the naval agents were acting under the command of the *Coast Guard*) (emphasis added); *United States Mendoza-Cecelia*, 963 F.2d 1467, 1478 (11th Cir. 1992) *abrogated on other grounds, Coleman v. Singletary,* 30 F.3d 1420 (11th Cir. 1994) (since "the Coast Guard[, rather than the Navy,] did the actual boarding, arrest, interrogation, and ensuing investigation," there was no violation of the Posse Comitatus Act); *Del Prado-Montero*, 740 F.2d at 116 (presuming that the Coast Guard's federal law enforcement activities did not violate the PCA). Not only does precedent firmly establish that the PCA does not apply to the Coast Guard, but such a conclusion is also mandated by statutory interpretation and the practical considerations associated with the Coast Guard's unique relationship with the military and federal law enforcement authorities.

The Court begins by noting that the PCA expressly states that the prohibition of the military in civilian law enforcement only applies to the "Army, the Navy, the Marine Corps, the Air Force, [and] the Space Force." 18 U.S.C. § 1385. If Congress intended the PCA to apply to the Coast Guard, Congress could have included the agency in the statute as is evident by the addition of every other military branch, including the Space Force, in the Act's most recent amendment. *See id.* Munoz cannot avoid the Coast Guard's glaring absence from PCA by simply asking the Court to implicitly read the Coast Guard into the statute either. Unlike the other branches of the military, the Coast Guard is a hybrid agency that primarily resides under the Department of Homeland Security "except when operating as a service to the Navy." 14 U.S.C. § 103(a).[10] *Cf. Louisville & N.R. Co. v. United States*, 258 U.S. 374, 376 (1922) ("Since those in the Navy and Marine Corps are to be deemed troops within the meaning of those acts, members of the Coast Guard should also be deemed such when serving as part of the Navy. But at other times members of the Coast Guard are not troops[.]").[11] The only time

---

[10] Section 103(a) states in full: "The Coast Guard shall be a service in the Department of Homeland Security, except when operating as a service in the Navy." 14 U.S.C. § 103(a).

[11] At the time of decision in *Louisville & N.R. Co.*, the Coast Guard was under the Treasury department and was not transferred to the Department of Homeland Security until 2003. *See History of Coast Guard Day, Armed Forces Day*, https://afd.defense.gov/History/Coast-Guard-Day/ (last accessed on Apr. 15, 2024). Nevertheless, the *Louisville & N.R. Co.* decision makes clear that, as early as 1922, the Coast Guard, unlike other branches in the military, was found to operate under the domain of civilian executive agencies.

the agency operates under the Navy is when Congress orders it to "upon declaration of war if Congress *so directs in the declaration* or when the President Directs." 14 U.S.C. § 103(b) (emphasis added). Munoz offers no indication, nor could he, that the Coast Guard had been directed by Congress or the President to act in service to the Navy when the Coast Guard boarded and searched his vessel.[12] Therefore, to the extent Munoz suggest that the Coast Guard was acting in service to the Navy, his argument fails.

Additionally, while Munoz contends that the Coast Guard acted "similar to the U.S. Navy" by employing authority shared by both the Coast Guard and the Navy under international law, this argument cannot withstand scrutiny. (ECF No. 76.) As explained above, the Coast Guard does not become a part of the Navy and therefore subject to the PCA, simply because it exercises authority the Navy also possesses.[13] There must be a formal designation by the President or Congress. 14 U.S.C. § 103(b). Moreover, even assuming arguendo that the Coast Guard relied on the cutter's "warship" status to board the defendant's vessel, the ship's status does not suddenly convert the Coast Guard agents into military personnel prohibited under the PCA from carrying out their federal law enforcement duties. This is evident by the fact that Coast Guard agents are authorized to carry out law enforcement duties aboard naval vessels. *See* 10 U.S.C. § 279. In those situations, the vessel itself is undoubtedly a military vessel. Nevertheless, in such situations, courts have not brought the Coast Guard's conduct under the purview of the PCA even when

---

[12] Congress' last declaration of war was in World War II. *See About Declarations of War by Congress*, United States Senate, https://www.senate.gov/about/powers-procedures.htm (last accessed April 15, 2024). Thus, the Congressional Provision does not apply. Similarly, the last time the President transferred the Coast Guard to the Navy Department was 1941. *See* Exec. Order No. 8929, 6 FR 5581 (Nov. 1, 1941). The Coast Guard was returned to the Treasury Department on January 1, 1946 and has not been under naval control since. *See* Exec. Order No. 9666, 11 FR 4 (Jan. 1, 1946); *see also Chronology of Coast Guard History*, United States Coast Guard: Department of Homeland Security, https://www.history.uscg.mil/research/chronology/ (last accessed April 15, 2024). Accordingly, the presidential directive provision does not apply in this instance either.

[13] The Court also notes that the Coast Guard's authority to board a vessel without nationality is not dependent on its ship being construed as a "warship" under international law. Pursuant to 14 U.S.C. § 522, Coast Guard officers "may at any time go on board of any vessel subject to the jurisdiction . . . of the United States. . .[and] be deemed to be acting as agents of the particular executive department or independent establishment charged with the administration of the particular law." 14 U.S.C. §§ 522(a), (b)(1). Therefore, the Coast Guard is not inherently exercising military authority simply because it boards a vessel on the high seas.

they have exercised the vessel's right to board. *See Khan*, 35 F.3d at 428; *Mendoza-Cecelia*, 963 at 1477-78, *abrogated on other grounds, Coleman v. Singletary,* 30 F.3d 1420 (11th Cir. 1994); *United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1259 (9th Cir. 1998); *cf. United States v. Cardona-Sandoval*, 6 F.3d 15, 18 (1st Cir. 1993). Thus, the classification of the Coast Guard cutter as a "warship" is wholly irrelevant to whether the Coast Guard's conduct was subject to the Posse Comitatus Act in this instance. Consequently, the Court can reasonably conclude that the Coast Guard agents were operating as federal law enforcement personnel when the agents boarded the vessel, and thus, the Coast Guard was not subject to the PCA here.

However, the Court need not rely on organizational flow charts alone to determine whether the PCA applies to the Coast Guard's conduct. Congress has made it plain that it had no intention of extending the statutory reach of the PCA to the Coast Guard. The PCA expressly states that the military branches may not be used as a posse comitatus "except in cases and under circumstances expressly authorized by the Constitution or Congress." 18 U.S.C. § 1385. Thus, if Congress has given a military branch authority to enforce civil law, there is no violation of the PCA when the military branch is carrying out those statutorily enumerated duties. *See, e.g., United States v. Hernandez-Garcia*, 32 F.4th 1207, 1213 (9th Cir. 2022) ("Here, the Posse Comitatus Act posed no obstacle to the U.S. Marines['] assistance because Section 1059 of the 2016 NDAA expressly authorizes surveillance by the military at the southern border."); *Del Prado-Montero*, 740 F.2d at 116 (noting that although the Navy was subject to PCA as a result of internal naval regulation, the conduct in question in the case was authorized by Congress, and thus, the Navy's participation in the matter did not violate the PCA). Pertinent here is 14 U.S.C. §§ 102(1) and (2) wherein Congress has expressly assigned to the U.S. Coast Guard the duty to "enforce or assist in the enforcement of all appliable federal laws on and under the high seas [, and] engage in maritime air surveillance or interdiction to enforce or assist in the enforcement of the laws of the United States." Even more importantly, under 14 U.S.C. § 522:

> The Coast Guard may make inquiries, examinations, inspections, searches, seizures, and arrests upon the high seas and waters over which the United States has jurisdiction…[Coast Guard] officers may at any time go on board of

*United States v. Eleuterio, et al.*
Case No. 3:21-cr-0001
Memorandum Opinion
Page 11 of 12

> any vessel subject to the jurisdiction, or to the operation of any law, of the United States, address inquiries to those on board, examine the ship's documents and papers, and examine, inspect, and search the vessel and use all necessary force to compel compliance. When from such inquiries, examination, inspection, or search it appears that a breach of the laws of the United States rendering an individual liable to arrest is being, or has been committed, by any individual, such individual shall be arrested.

*See also United States v. Benoit*, 730 F.3d 280, 284 (3d Cir. 2013) (asserting that under Section 522, "Congress has granted the U.S. Coast Guard broad authority to board vessels on the open seas.").[14] Therefore, even accepting Munoz's argument that the Coast Guard implicitly fell within the purview of the PCA when the agents boarded his vessel, the Coast Guard's conduct, nevertheless, did not violate the PCA given that Congress expressly permitted the Coast Guard to engage in all the conduct in question.[15] As is evident by the foregoing statutes, Congress intended the Coast Guard to be exempt from the Posse Comitatus Act in situations like the one currently before the Court. Accordingly, because Congress did not list the Coast Guard as one of the military branches subject to the Posse Comitatus Act, and because Congress has given the Coast Guard express authority to enforce federal law by conducting searches and seizures on the high seas, the Court will deny Munoz's motion to suppress for violation of the Posse Comitatus Act.[16]

### C. The Motion to Suppress the Contents of the Cellphone is Moot.

In Munoz's May 10, 2021 motion to suppress, he argues that the U.S. Coast Guard boarding team who arrested him unlawfully seized the contents of a cell phone on board the vessel in violation of the Fourth Amendment when they reviewed the data on the phone and SIM card without a warrant. (ECF No. 54.) Because the agents searched the contents of the phone without first obtaining a warrant, Munoz contends that the contents of the phone,

---

[14] 14 U.S.C. § 89(a) as referenced in *Benoit*, is now 14 U.S.C. § 522(a) of the United States Code. 730 F.3d at 284.

[15] Munoz asserts that the Coast Guard "interdicted the vessel the Defendant was on, seized the Defendant's person, searched the vessel for evidence (and obtained/collected evidence), arrested the Defendant, interviewed/interrogated the Defendant, used force against the Defendant (by firing at the vessel and rendering the vessel inoperable), and tested the evidence." All such conduct is expressly permitted by statute. *See* 14 U.S.C. § 522 and 14 U.S.C. § 102.

[16] The Court will not consider whether the exclusionary rule is the appropriate remedy given that the Court has concluded there has been no violation of the Posse Comitatus Act in this instance.

specifically the data on the phone's SIM card should be suppressed. *See id.* The Government does not contest any of Munoz's factual allegations. *See* ECF No. 72. Instead, the Government notes that the agents did seize and eventually search the cellphone and SIM card but were unable to obtain any useful information from the device. *See id.* As such, the Government avers that there is nothing from the extraction of the phone that the Government intends to use in the prosecution of the defendants. *Id.*

In light of the fact that the Government does not intend to use any of the evidence from the extraction of the phone to prosecute the defendants, Munoz stands to gain nothing if the Court were to grant his request. As such the Court finds the motion to suppress the evidence from the phone moot. *See United States v. Coles*, Crim. No. 06-316, 2008 WL 11432175, at *5 (W.D. Pa. Apr. 21, 2008) (finding that because the government did not intend to introduce the evidence at issue, the Defendant's motion to suppress was moot).

## IV.   CONCLUSION

For the reasons set forth above, the Court finds that the Posse Comitatus Act does not apply to the United States Coast Guard. Thus, the motion to suppress at ECF No. 76 will be denied. Additionally, because the Court finds that the Government does not intend to use any information extracted from Munoz's cellphone, the motion to suppress at ECF No. 54 is moot.

An accompanying order of even date will follow.

**Dated:** April 15, 2024                                    /s/  *Robert A. Molloy*
                                                             **ROBERT A. MOLLOY**
                                                             **Chief Judge**